J-S45010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
THOMAS JOSEPH JAVA :
:
Appellant : No. 1967 EDA 2016

Appeal from the PCRA Order May 26, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0000279-2010

BEFORE:     GANTMAN, P.J., PANELLA, J., and STRASSBURGER, J.*

MEMORANDUM BY GANTMAN, P.J.:          **FILED AUGUST 15, 2017**

Appellant, Thomas Joseph Java, appeals from the order entered in the Delaware County Court of Common Plea, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this case are as follows. In 2009, Victim filed a police report, which stated Appellant had sexually abused Victim numerous times over a number of years.  Specifically, Victim informed police that Appellant forced her to engage in vaginal intercourse and threatened to kill Victim if she told anyone about the abuse.  Victim was approximately six to fifteen years old at the time of the alleged abuse.  After an investigation, police arrested Appellant; and on February 12, 2010, the

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

_____

*Retired Senior Judge assigned to the Superior Court.

Commonwealth charged Appellant with rape, sexual assault, and related offenses. Appellant proceeded to a bench trial on October 29, 2010. On November 5, 2010, the court convicted Appellant of three counts each of rape, sexual assault, indecent assault of a child, and corruption of minors. The court sentenced Appellant on February 16, 2011, to an aggregate term of ten (10) to twenty (20) years' imprisonment, followed by eight (8) years' probation. Appellant timely filed a notice of appeal on February 25, 2011; however, Appellant discontinued the appeal on December 22, 2011.

On December 19, 2012, Appellant timely filed a *pro se* PCRA petition, and the PCRA court appointed counsel. On October 8, 2013, PCRA counsel filed a petition to withdraw at Appellant's request. The court held a *Grazier*[2] hearing on November 19, 2013. The court granted PCRA counsel's petition to withdraw on November 21, 2013, and permitted Appellant to proceed *pro se*. On December 10, 2014, the PCRA court ordered the Commonwealth to file an answer to Appellant's *pro se* PCRA petition, and the Commonwealth complied on April 9, 2015. The court held a PCRA hearing on January 21, 2016, which resulted in an *in camera* hearing to allow Appellant to view certain documents in the case file. The PCRA court granted Appellant leave on February 2, 2016, to supplement the PCRA petition based on the document revealed in the *in camera* hearing. Appellant filed a supplement

---

[2] *Commonwealth v. Grazier*, 552 Pa. 9, 713 A.2d 81 (1998).

to his PCRA petition on April 7, 2016, and the PCRA court denied relief on May 26, 2016. Appellant timely filed a notice of appeal on June 27, 2016. On June 29, 2016, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed his Rule 1925(b) statement on August 19, 2016.

Appellant raises the following issue for our review:

> [WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR ABANDONING COUNSEL'S TRIAL STRATEGY?]

(Appellant's Brief at 4).

As a preliminary matter, to preserve claims for appellate review, "appellants must comply whenever the trial court orders them to file a Statement of [Errors] Complained of on Appeal pursuant to [Rule] 1925. [As a general rule, a]ny issues not raised in a [Rule] 1925(b) statement will be deemed waived." *Commonwealth v. Castillo*, 585 Pa. 395, 403, 888 A.2d 775, 780 (2005) (quoting *Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998)). Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure provides in relevant part:

> **Rule 1925. Opinions in Support of Order**
>
> *   *   *
>
> **(b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.**—If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the

- 3 -

errors complained of on appeal ("Statement").

(1)    *Filing and service*.—Appellant shall file of record the Statement and concurrently shall serve the judge.  Filing of record and service on the judge shall be in person or by mail as provided in Pa.R.A.P. 121(a) and shall be complete on mailing if appellant obtains a United States Postal Service Form 3817, Certificate of Mailing, or other similar United States Postal Service form from which the date of deposit can be verified in compliance with the requirements set forth in Pa.R.A.P. 1112(c).  Service on parties shall be concurrent with filing and shall be by any means of service specified under Pa.R.A.P. 121(c).

(2)    *Time for filing and service*.—The judge shall allow the appellant at least 21 days from the date of the order's entry on the docket for the filing and service of the Statement.  Upon application of the appellant and for good cause shown, the judge may enlarge the time period initially specified or permit an amended or supplemental Statement to be filed.  Good cause includes, but is not limited to, delay in the production of a transcript necessary to develop the Statement so long as the delay is not attributable to a lack of diligence in ordering or paying for such transcript by the party or counsel on appeal. In extraordinary circumstances, the judge may allow for the filing of a Statement or amended or supplemental Statement *nunc pro tunc*.

(3)    *Contents of order.*—The judge's order directing the filing and service of a Statement shall specify:

  (i)    the number of days after the date of entry of the judge's order within which the appellant must file and serve the Statement;

  (ii)    that the Statement shall be filed of record;

  (iii)    that the Statement shall be served on the judge pursuant to paragraph (b)(1);

  (iv)    that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived.

Pa.R.A.P. 1925(b)(1)-(3). For many years, full compliance with a court's Rule 1925(b) order was strictly mandatory; but later revisions in the rule now provide certain avenues for relief from waiver in the criminal appeal context. Pa.R.A.P 1925(c); *Commonwealth v. Hopfer*, 965 A.2d 270, 273 (Pa.Super. 2009) (enumerating extraordinary circumstances, such as where counsel fails to file court-ordered Rule 1925(b) statement, which would warrant remand for filing of statement, based upon *per se* ineffectiveness of counsel). Importantly, this Court will not find waiver based on an untimely Rule 1925(b) statement unless the trial court completes the following steps:

> First, the trial court must issue a Rule 1925(b) order directing an Appellant to file a response within [twenty-one] days of the order. Second, the Rule 1925(b) order must be filed with the prothonotary. Third, the prothonotary must docket the Rule 1925(b) order and record the date it was made. Fourth, the prothonotary shall give written notice of the entry of the order to each [party] of record, and it shall record in the docket the giving of notice. If any of [these] procedural steps…are not complied with, Appellant's failure to act in accordance with Rule 1925(b) will not result in a waiver of the issues sought to be reviewed on appeal.

*Commonwealth v. Hooks*, 921 A.2d 1199, 1202 (Pa.Super. 2007), *appeal denied*, 594 Pa. 695, 934 A.2d 1276 (2007) (internal citations omitted). For an appellant to comply with a Rule 1925(b), he must file a Rule 1925(b) statement with the ordering court's prothonotary, and concurrently serve the Rule 1925(b) statement upon the trial judge. *Commonwealth v. Schofield*, 585 Pa. 389, 392, 888 A.2d 771, 774 (2005). Failure to comply

with Rule 1925(b) by filing a Rule 1925(b) statement with the court and concurrently serving the statement on the trial judge results in waiver of all issues. **Commonwealth v. Butler**, 571 Pa. 441, 446-47, 812 A.2d 631, 634 (2002).

Instantly, Appellant timely filed a *pro se* notice of appeal on June 27, 2016. On June 29, 2016, the court ordered Appellant to file a Rule 1925(b) statement within twenty-one days; however, neither the order nor the docket indicates when the court served the Rule 1925(b) order on Appellant. **See** Pa.R.A.P. 1925(b)(2). Appellant filed his Rule 1925(b) statement on August 19, 2016, which indicated he had received the Rule 1925(b) order on August 4, 2016. Under these circumstances, we decline to find waiver of Appellant's issues based on the timing of Appellant's Rule 1925(b) statement filing. **See Hooks, supra**. Nevertheless, nothing in the record indicates Appellant concurrently served his Rule 1925(b) statement on the PCRA court judge. Thus, Appellant's issues are waived for purposes of our review for failure to comply with the requirement to serve the Rule 1925(b) statement on the judge. **See Schofield, supra**; **Butler, supra**; Pa.R.A.P. 1925(b)(1).

Moreover, even if Appellant had properly preserved his issue, he would not obtain relief. Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101, 108 (Pa.Super. 2011), *appeal*

*denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513, 515 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa.Super. 2012). If the record supports a PCRA court's credibility determination, it is binding on the appellate court. **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa.Super. 2014).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable James P. Bradley, we conclude Appellant issue on appeal merits no relief. The PCRA court opinion comprehensively discusses and properly disposes of the question presented. (**See** PCRA Court Opinion, filed August 17, 2016, at 19-22) (finding: vast majority of Appellant's claims of trial counsel's alleged ineffectiveness remain bald allegations with no support in record; to extent Appellant argues trial counsel was ineffective for failure to investigate correct medical records, Appellant failed to prove alleged medical records supported his claim of actual innocence; further, trial counsel secured relevant medical records from Victim's August 12, 2009 doctor visit after final instance of abuse; importantly, Victim did not report abuse to her primary care doctor during August 12, 2009 visit, and trial counsel used this fact to impeach Victim at trial; additionally, trial counsel's cross-examination

of sexual assault nurse revealed that Victim had no signs of severe trauma despite claim that Appellant had subjected Victim to repeated and continuous sexual intercourse from age six onward; thus, Appellant's claim that trial counsel was ineffective for failure to investigate medical records lacks merit; to extent Appellant asserts trial counsel was ineffective for failure to call ob-gyn expert to counter Commonwealth testimony and explain significance of Victim's positive test for "gardnerella vaginalis," Appellant failed to demonstrate such favorable expert testimony exists; further, Appellant merely baldly asserts "gardnerella vaginalis" is sexually transmitted disease, "gardnerella vaginalis" is transmittable during sexual intercourse, and Appellant does not suffer from "gardnerella vaginalis;" thus, Appellant's claim that trial counsel was ineffective for failure to call ob-gyn expert lacks merit; to extent Appellant avers trial counsel was ineffective for failure to call numerous impeachment witnesses at trial, Appellant did not call potential impeachment witnesses listed in his PCRA petition to testify at PCRA hearing; as such, Appellant failed to present evidence upon which PCRA court could conclude Appellant was prejudiced by absence of testimony at trial; further, record demonstrates trial counsel challenged credibility of Victim through cross-examination of Commonwealth's witnesses and presentation of testimony of Victim's sister, C.S., at trial; thus, presentation of additional impeachment witnesses would have been cumulative, and Appellant's claim that trial counsel was ineffective for failure to call

impeachment witnesses fails; Appellant's myriad of additional claims of trial counsel's alleged ineffectiveness are vague, speculative, and unsupported by evidence in record; based on foregoing, PCRA court properly denied relief on Appellant's ineffective assistance of trial counsel claims). Accordingly, even if Appellant had properly preserved his claims, we would affirm on the basis of the PCRA court's opinion.

Order affirmed.[3]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2017

---

[3] Due to our disposition, we deny Appellant's open motion to add exhibit page to Appellant's reply brief.

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | CP-23-CR-279-2010 |
| | : | |
| **vs.** | : | **1967 EDA 2016** |
| | : | |
| **THOMAS JAVA** | : | |
| | : | |

**D. Daniel Woody, Esquire, on behalf of the Commonwealth**
**Thomas Java, *pro se***

## O P I N I O N

Bradley, J.                                   FILED: 8|17|16

Petitioner, Thomas Java, filed a Notice of Appeal on June 27, 2016 from the Order[1]

denying his Post Conviction Relief Act (PCRA) petition after an evidentiary hearing. On June

28, 2016 Petitioner was ordered to file a Statement of Matters Complained of on Appeal. The

docket shows that he was served in accordance with Pa.R.Crim. P. 576(A). Petitioner has

failed to comply. It is respectfully submitted that given the procedural history of this case

Petitioner has failed to preserve issues he may seek to raise on appeal because they have

been waived.

The petition that is before the court was filed on December 19, 2012. During the

intervening years Petitioner has made numerous requests and has filed countless petitions

---

[1] An evidentiary hearing took place on January 21, 2016. On May 30, 2016 the Court entered an Order denying Petitioner's request for relief. This Order included findings of fact.

1



including at least two interlocutory appeals[2]. The purpose of PA. R. A. P. 1925 is to aid appellate review by providing the PCRA court the opportunity to focus its opinion upon those issues that a Petitioner wishes to raise on appeal. See generally Commonwealth v. Castillo, 888 A.2d 775, 778 (Pa. 2005); Commonwealth v. Butler, 812 A.2d 631 (Pa. 2002). By failing to comply with the Rule 1925(b) Order, given the circumstances of this case, Petitioner has denied the Court this opportunity.

The provision set forth in Pa.R.A.P. (c) (3) ("If an appellant in a criminal case was ordered to file a Statement and failed to do so, such that the appellate court is convinced that counsel has been per se ineffective, the appellate court shall remand for the filing of a Statement *nunc pro tunc* and for the preparation and filing of an opinion by the judge.") is unavailable to Petitioner because he has chosen to waive his right to counsel and a knowing, intelligent and voluntary waiver was accepted by the court. Compare Commonwealth v. Burton, 973 A.2d 428 (Pa. Super. 2009). See also Commonwealth v. Spotz, 18 A.3d 244, 270 (Pa. 2011) (a defendant who elects to exercise his right to self-representation is precluded from raising any claims of ineffective assistance of counsel that arose during the period of self-representation).

Petitioner was charged with rape[3], sexual assault[4], corruption of minors[5] and related offenses after his putative step-daughter reported that Petitioner had been repeatedly and continually raping her over a period of many years. After a bench trial[6] he was found guilty of

---

[2] Two appeal were docketed in the Superior Court at 1959 EDA 2014 and 1922 EDA 2014. To date, every Notice of Appeal that Petitioner has filed has been quashed in the Superior Court as interlocutory.

[3] 18 Pa.C.SA. § 3121(a)(1)

[4] 18 Pa.C.SA. § 3124.1

[5] 18 Pa.C.SA. § 6301(a)(1)

[6] Trial took place on October 29, 2010.The verdict was announced on November 5, 2010.

rape by forcible compulsion, sexual assault and corruption of minors. On February16, 2011 an aggregate sentence of ten to twenty years of imprisonment to be followed by eight years of probation was imposed. Trial counsel, Steven O'Meara filed a motion for reconsideration of Petitioner's behalf on February 22, 2011. Three days later, on February 25, 2011 Petitioner filed a *pro se* Notice of Appeal.

On July 15, 2011 trial counsel petitioned to withdraw his appearance. The petition was granted and new counsel, Daniel Donohue, Esquire, was appointed to represent Petitioner on appeal. On December 19, 2011 Mr. Donohue filed a praecipe to withdraw the appeal.

On December 19, 2012 Petitioner filed a *pro se* Post Conviction Relief Act (PCRA) petition. PCRA counsel was appointed. On April 10, 2013 Petitioner filed a *pro se* Motion for withdrawal of counsel. PCRA counsel was granted several extensions of time in which to file an amended PCRA petition and on September 27, 2013 he filed a "Motion for Leave to Employ a Criminal Investigator." This motion was denied on October 3, 2013. Shortly thereafter, on October 8, 2013 PCRA counsel petitioned to with draw his appearance at the Petitioner's request. Appointed counsel averred that Petitioner informed him that he no longer wanted appointed counsel to represent him and directed counsel to file a motion to withdraw. A hearing took place via Simultaneous Audio-Visual Communication on November 21, 2013 and counsel was granted leave to withdraw. At the same hearing Petitioner stated that he wished to proceed *pro se*. A colloquy was conducted in accordance with Commonwealth v. Grazier, 713 A.2d 81 (Pa. 1998), and the court accepted Petitioner's waiver of his right to counsel as knowing, intelligent and voluntary. Petitioner was afforded the opportunity to file an amended PCRA petition.

3

Thereafter, Petitioner filed the following:

1) December 18, 2013 a "Petition for Extension of Time and the Enforcement of Production of Discovery and/or

2) February 27, 2014 "Defendant's Pro SE Motion for Discovery and Extension of Time

3) March 31, 2014 "Defendant's Proo SE Motion to Produce Records 'Duces Tecum."

4) April 21, 2014 Pro se Motion for Discovery

5) April 21, 2014 Defendant's motion for Extension of Time and Decision of Last Two Motions."

6) May 23, 2014 "Pro se Motion for Mediacal Records"

7) May 27, 2014 pro se "Motion for Leave to Employ a Criminal Investigator."

8) May 27, 2014 Motion for Medical Expert

9) June 16, 2014 Motion to Enforce Order and Stay of Time."

10) Notice of Appeal to the Superior Court.

11) July 1, 2012 Notice of Appeal to the Superior Court

12) July 11, 2014 Motion for Discovery pursuant to Rule 902(E)(1).

13) July 25, 2014 Motion to Compel Discovery and to Amend Petition.

14) August 14, 2014 Defendant's *pro se* Objection to the Court

15) September 15, 2014 Notice of Appeal of Objection to the Court

16) November 7, motion for Rule to Show Cause

17) January 12, 2015 petition for writ of mandamus

18) March 2, 2015 Defendant's petition for writ of mandamus

19) March 2. 2015 Application for Leave to File in Original Process

20) April 6, 2015 Petition to Compel Court to Produce Certified Copy of Discovery

21) June 1, 2015 Defendant's motion for an evidentiary hearing

Because Petitioner failed to file an amended petition and in an effort to move these proceedings forward[7], the Commonwealth was ordered to file an answer to the *pro se* petition that was filed on December 19, 2012. Leave for an extension of time was granted

---

[7] Two appeal were docketed in the Superior Court at 1959 EDA 2014 and 1922 EDA 2014. To date, every Notice of Appeal that Petitioner has filed has been quashed in the Superior Court as interlocutory.

4

and the Commonwealth's answer was filed on April 9, 2015. On April 30, 2015 an evidentiary hearing was scheduled to take place on September 17, 2015. Standby counsel was appointed. Thereafter Petitioner filed a request that the date of the hearing be continued to take place in 2016. That request was granted and a hearing was scheduled for January 21, 2016.

The evidence that was presented at trial follows. Petitioner, the victim ("L.S."), her two siblings and her mother lived together as a "family." The victim's mother ("J.V.") had two younger children by the Petitioner. By all accounts the household was chaotic. The family moved frequently and the Petitioner and J.V. were habitually drunk. When they were drunk they fought. See N.T. 10/29/10 pp. 27-28, 67. J.V. worked and the Petitioner did not. Petitioner was left to supervise the children, including L.S. Id. at 28. L.S. described her relationship with the Defendant as "sick." Id. at 31. They were always fighting about her "doing stuff around the house," and the police were called to the house when they fought. Id. at 31-32.

At trial L.S. testified that on the day after her 6th birthday Petitioner took her to the basement of their residence at the time, removed her pants and had vaginal intercourse with her while her face was covered. Id. at 15-20. He threatened that if she told anyone he would kill her and "get away with it. Id. at 19. This behavior was repeated over the years. Usually the assaults took place in the basement and always when no one else was home. Id. at 21-22, 68.

The final incident took place in 2009 when L.S. was fifteen years old. They were living on Chester Avenue in Clifton Heights. Id. at 23. L.S. shared a bedroom with her mother and

5

Petitioner slept on a sofa in the living room. L.S. had showered. She left the upstairs bathroom with only a towel wrapped around her. Id. at 23-27. She went to her bedroom and as she was getting clothes from a dresser drawer she heard the Petitioner coming. He grabbed her, pulled her down on the bed and covered her face. He put his penis in her vagina. After this incident L.S. left the home and didn't return for a couple of days. Id. at 27.

In the summer of 2009 L.S. was on a camping trip when she told her friend, Camille, that Petitioner raped her. L.S. was crying and asked Camille not to tell anyone and Camille complied. Id. at 31, 78-83. In August of 2009 L.S. told her sister's boyfriend, Greg, that the Petitioner "rapes" her. Id. at 31, 87-89. Greg told L.S.'s sister ` c,s . about the conversation and c.s. confronted L.S. Id. at 31. Following that conversation L.S. contacted her biological father and shortly thereafter, on August 26, 2009, the police were notified. Id at 31. L.S. went to Delaware County Memorial Hospital for a sexual assault examination on August 26, 2009 after the final assault was reported. Id. at 31.

On cross examination L.S. admitted that on August 11, 2009, police officers were called to the house when she and Petitioner were fighting. Id. at 46. This was before she reported to the police that the Petitioner had been "raping" her. Trial counsel questioned L.S., regarding her failure to report the Petitioner's assaults on that day. Id. at 46. L.S. admitted that on that occasion she was told to leave the home but insisted that over time she failed to report because she was afraid of the Petitioner. Id. at 46.

Trial counsel cross examined L.S. extensively with facts that were obviously designed to undermine her credibility. While she testified that the assaults began when she was six years old, in her statement to police she reported that they began when she was nine years

6

old, and she told police that they occurred "almost every day." Id. at 38-41. She admitted that at one time there were twelve people living in one small two-bedroom home where she alleged assaults took place and that her loud screams were not heard by neighbors or housemates. Id. at 45. She claimed that she was raped up to fifteen times a month, always when no one was home. Id. at 45. Although L.S. lived with her biological father for a time when she was nine or ten years old, she never told her father about the ongoing assaults. Id. at 54. She engaged in underage drinking and was issued a citation on August 10, 2009, the day before she and Petitioner fought about whether or not she would unload the dish washer. Id. at 56. Trial counsel suggested that her complaint was prompted by anger when Petitioner refused to pay the fine attached to the citation for underage drinking. Id. at 56. L.S. went to her physician for a respiratory ailment on August 12, 2009 and never confided in the doctor concerning the assaults that she had been subjected to. Id. at 58, 60. L.S. never reported the assaults to a teacher or guidance counsellor. Id. at 62 L.S. knew that her mother was the victim of sexual assault by her own father, who held J.V. down and covered her face during sexual intercourse. Trial counsel suggested that L.S. was reporting a story that mimics J.V.'s and that L.S. learned the details either from her mother or from letters that her mother had written and kept in the bedroom they shared. Id. at 64-65. Trial counsel questioned her regarding the absence or presence of bruising and bleeding over the many years that L.S. alleged that the assaults occurred. Id. at 66. L.S. testified that she bled after intercourse when she was six years old. Id. at 43. Trial counsel suggested that L.S. was angry with Petitioner because her mother's life revolved around Petitioner and their drinking

7

rather than around L.S.'s well-being and she craved attention. Id. at 67. L.S. admitted that she and Petitioner were constantly "at each other's throats," Id. at 48.

J.V. was married to another man at the time of trial. She described a chaotic lifestyle when she lived with Petitioner, corroborating L.S.'s testimony. J.V. and the Petitioner spent a lot of time drinking. Id. at 110. The family moved frequently. Id. During the many years that Petitioner was allegedly committing the assaults, J.V. never noticed blood or bruising on her daughter and L.S. never said anything about what was going on. Id. at 128. When J.V. learned of the allegations she did not believe L.S. Id. at 113. J.V. testified that her own father had sexually abused her and that a letter in which she recounted the details of those assaults was accessible to L.S. because it was in the bedroom that they shared. Id. at 121. She testified that she, Petitioner and the other children referred to L.S. as "Lori, Lie, Lie." Id. at 123.

Kathleen Keenan, a registered nurse/sexual assault nurse examiner saw the victim at Delaware County Memorial Hospital on August 26, 2009. She testified that her examination of the victim was limited to a visual examination and L.S.'s verbal account. Id. at 38. She made no attempt to collect evidence for forensic purposes because the victim reported that the most recent assault was three weeks prior and under those circumstances she could not expect that any evidence would remain. She observed no evidence of trauma on the victim's body although L.S. reported that there had been some bleeding after the most recent assault. L.S. appeared to be visibly upset during the examination. Id at 139-42.

Sergeant Steven Brown of the Clifton Heights Police Department was assigned to this investigation. He interviewed L. S., her parents, her brother and sister and her sister's

8

boyfriend Greg before interviewing the Petitioner. Id. at 151. During an August 26, 2009 interview Petitioner stated that L.S. never saw him naked, she never saw his penis, that he didn't "do it," and he expressed disbelief that L.S. was alleging that he assaulted her. Id. at 153. In a subsequent interview, on August 27, 2009, Defendant told investigators that he had spoken to J.V. about the allegations and then he did admit that there were times when he was home alone with L.S. Id. at 156. He went "on and on" about L.S. never having seen him naked and expressed disbelief concerning the fact that she was making this claim. Id. at 155. He was then questioned about the most recent incident described by L.S., "the incident of her coming out of the shower." Id. at 156. When confronted with L.S.'s account, "that she was coming out of the shower you pushed her down on the bed, covered her face and you penetrated her with your penis for about two minutes, then you got up and left," he admitted that he tackled her when she came out of the shower wearing a towel. Id. at 157-58. He insisted however that he did not take his clothes off or penetrate her and that she never saw him naked and he never touched her in any inappropriate way. Id. at 157. He admitted that although L.S. was fifteen years of age he still wrestled with her. Id. at 157. The audio-tape of the August 27th interview, along with a transcript was offered into evidence (Exhibits C-5 & C-6) and the court reviewed both exhibits. Id. at 164.

L.S.'s sister, C.S. testified on Petitioner's behalf. C.S., who is two years older, did not believe her sister's allegations. She too, testified that J.V. and Petitioner were "terrible together" and that she and L.S. hated living with them. Id. at 173. L.S. and Petitioner were always fighting about household chores. According to C.S., L.S. instigated fights with family members and "lies about everything." Id. at 175-76. L.S. and

9

C.S. were not "close" and L.S. never told her sister that the Petitioner was assaulting her. C.S. never observed anything that indicated that Petitioner was assaulting her sister. Id. at 170, 174. She testified that her friends and L.S.'s friends were always at the house, raising the inference that Petitioner never had the opportunity to assault L.S. She testified that during the ten to twelve years they all lived together, Petitioner was never alone with L.S. Id. at 186. C.S. described Petitioner as her "best friend," admitting on cross-examination that before he was "locked up" they smoked marijuana and drank together. Id. at 178, 183.

After considering all of the testimony and reviewing the Petitioner's statement to police the court, sitting as the fact finder, concluded that the Commonwealth presented credible evidence proving beyond a reasonable doubt that the Petitioner committed the acts alleged during the summer of 2009. In drawing this conclusion the court accepted the fact that the household that L.S. lived in was dysfunctional by all measure. Trial counsel explored many legitimate factors that might cast a negative light on L.S.'s credibility including her delay in reporting ongoing assaults, her animosity toward the Petitioner and the lack of medical findings that would support a sexual assault case. However, facts that reasonably explained those circumstances also existed and the Petitioner's admission to tackling and wrestling fifteen year-old L.S. to the ground as she stepped from the shower wrapped in a towel weighed heavily against the credibility of his claim that he never saw her naked and did "nothing inappropriate." These statements lent credibility to L.S.'s testimony which, if believed, supported the conclusion that in fact Petitioner did engage in sexual intercourse with L.S. without her consent. As the factfinder the trial court must determine the credibility of the witnesses and the weight of the evidence. In discharging this duty the court is free to

10

believe all, some, or none of the evidence presented. See generally Commonwealth v. DeJesus, 860 A.2d 102, 107 (Pa. 2004); Commonwealth v. Miller, 724 A.2d 895, 901 (Pa. 1999); Commonwealth v. Shaver, 460 A.2d 742, 745 (Pa. 1983); Commonwalth v. Blackham, 909 A.2d 315, 320 (Pa. Super. 2006). See also Commonwealth v. Castelhun, 889 A.2d 1228, 1232 (Pa. Super. 2005) ("it is well-established that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses."); Commonwealth v. Bishop, 742 A.2d 178, 189 (Pa.Super.1999); Commonwealth v. Davis, 437 650 A.2d 452, 455 (Pa. Super. 1994) (uncorroborated testimony of sexual assault victim, if believed by the trier of fact, is sufficient to support convictions even if the defense presents countervailing evidence); Commonwealth v. Trimble, 615 A.2d 48, 50 (1992) (testimony of child victim alone sufficient to support conviction for sex offenses).

To be eligible for PCRA relief, a Petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found at 42 Pa.C.S. § 9543(a)(2) (listing, *inter alia*, the ineffective assistance of counsel and the unavailability at the time of trial of exculpatory evidence, which would have changed the outcome of the trial had it been introduced). Commonwealth v. Koehler, 614 Pa. 159 (Pa. 2012). Further, Section 9543 requires the petitioner to demonstrate that the issues raised in his PCRA petition have not been previously litigated or waived. Id. § 9543(a)(3). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." § 9544(a)(2). A PCRA claim is waived "if the petitioner could have raised it but failed to do so

11

before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding." § 9544(b).

Where a petitioner claims that his conviction resulted from the "(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place," 42 Pa.C.S.A. §9543(a)(2)(ii), he may only prevail if he pleads and proves that his conviction or sentence resulted from ineffective assistance of counsel that, under the circumstances, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have occurred. Id. To succeed on an ineffectiveness claim, a petitioner must demonstrate that: 1) the underlying claim is of arguable merit; 2) counsel had no reasonable basis for the act or omission in question; and 3) he suffered prejudice as a result, i.e., there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. Id. See also Commonwealth v. Gribble, 863 A.2d 455, 472–73 (Pa. 2004). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. Id.

In Commonwealth v. Rivers, 786 A.2d 923, 929 (Pa. 2001) the Court explained "PCRA claims are not merely direct appeal claims that are made at a later stage of the proceedings, cloaked in a boilerplate assertion of counsel's ineffectiveness. In essence, they are extraordinary assertions that the system broke down." As a "general and practical matter, the fact that a claim is litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error, makes it more difficult for the defendant to prevail." Commonwealth v. Gribble, supra. The harmless error analysis that is applicable where trial

12

error is claimed on direct appeal is not applied. "Harmless error" analysis places the burden of proving that an alleged error did not contribute to the verdict beyond a reasonable doubt on the Commonwealth. Id. at 472. ( "[w]henever there is a 'reasonable possibility' that an error 'might have contributed to the conviction,' the error is not harmless."). In PCRA proceedings the burden of proof is with petitioner. Commonwealth v. Gribble, supra. Counsel is presumed effective and not every error by counsel will result in a constitutional violation of a defendant's Sixth Amendment right to counsel. Id. The petitioner must prove actual prejudice: that is that counsel's conduct had an actual adverse effect on the outcome of the proceedings. Id. Stated differently, that "there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." Id.

In the *pro se* petition filed on December 19, 2012 Petitioner alleged that his conviction resulted from "(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place [and the] (ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(I & ii).

At the January 21, 2016 evidentiary hearing Petitioner did not testify and he did not call trial counsel as a witness. He read from his petition, restating many of the allegations that were set forth in his petition without offering proof in support. See N.T. 1/21/16 pp. 7-35 Accordingly, the vast majority of Petitioner's claims remain bald allegations that have no

13

support either within or outside the record. With the exception of Paul Anderson, he failed to call any of the witnesses that are referred to in the petition to prove the claim that trial counsel was ineffective for failing to call certain witnesses at trial. Given this circumstance the Petitioner has failed to present evidence upon which the court could conclude that the absence of testimony from the identified witnesses was so prejudicial as to have denied the defendant a fair trial. Regarding the "reasonable basis" for counsel's failure to call the witnesses, the record demonstrates that counsel challenged the credibility of the victim through cross-examination of the Commonwealth's witnesses and through the testimony of C.S. at trial. See N.T. 10/29/10 pp. 166-201; 123. The reasonableness of a decision to forego the testimony of additional witnesses is therefore apparent from the record. The testimony would have been cumulative and was presented through other sources.

Paul Anderson and C.S. did testify at the PCRA hearing over the Commonwealth's objection. N.T. 1/21/16. Paul Anderson, a lifelong friend of the Petitioner, testified that on several occasions, before the Petitioner was arrested, he heard L.S. threaten to call the police on the Petitioner and have him "locked up." Id. at 36, 38. Mr. Anderson testified that he provided this information to trial counsel before trial in a letter in which he offered to testify to help his friend. Id. at 42-43, 46-48. Paul Anderson was a lifelong friend of the Petitioner and the PCRA court assigned his testimony little, if any weight.

C.S. also testified that she witnessed L.S. threaten the Petitioner and that L.S. said that she wanted him in jail to get him out of the house. Id. at 58. C.S. testified at trial. She testified there that she and her sister discussed their living situation:

14

"[w]e talked about how [J.V. and Petitioner] were terrible together and we hated living like how we did and we wished it could change, but we knew they would never break up." N.T. 10/29/10 p. 173. L.S. never told her sister that the Petitioner was assaulting her and she witnessed fights between L.S. and Petitioner when he asked her to do things like empty the dishwasher. Id. "[H]e would just tell her like to do something with your life and then she would get angry and start throwing things and yelling things to him. Sometimes she would turn on my mom and she would get angry at my mom." Id. The family called L.S. "Lori Lie Lie," because "[s]he lied about everything." Id. at 176. she testified that L.S. "instigated " fights with everyone.

The Commonwealth offered the testimony of appellate counsel, Daniel Donohue. Mr. Donohue testified that he was appointed to represent Petitioner when trial counsel moved to withdraw after the Notice of Appeal was filed and after trial counsel filed a Concise Statement of Errors Complained of on Appeal. N.T. 1/21/16 p. 64. He consulted with the Petitioner and concluded that the claims that Petitioner wished to pursue were claims of trial counsel's ineffectiveness. Petitioner complained that trial counsel failed to call beneficial witnesses and failed to adequately impeach L.S.'s testimony concerning the time and locations of the assaults. Id. at 65. Additionally, Petitioner alleged that there was evidence that L.S. had a sexually transmitted disease that trial counsel failed to put forth at trial. Mr. Donohue explained that, given the record, he did not believe that challenge to the sufficiency or weight of the evidence or a claim that the sentence imposed was excessive would be successful on direct appeal. Id. at 66. He also explained that the claim that trial counsel provided ineffective assistance could not be raised on direct appeal but must be reserved for

15

a collateral attack. Id. Petitioner maintained his innocence and was "eager" to raise a collateral attack on his conviction. After consulting with Mr. Donohue Petitioner directed Mr. Donohue to withdraw the appeal. The appeal was discontinued on December 22, 2011 at Petitioner's request. Thereafter, on December 16, 2012 the PCRA petition that is before the Court was filed. Id. at 67. Mr. Donohue's testimony was credible in its entirety.

During the course of Mr. Donohue's testimony the court learned that Petitioner asked Mr. Donohue to hand over his file so that he might pursue PCRA relief. Mr. Donohue complied but retained items that, as a result of pre-trial rulings, could not be disseminated without prior court approval including portions of school, medical and CYS records. Mr. Donohue advised the Petitioner that after he filed a PCRA petition the documents that were deemed confidential would be provided to appointed PCRA counsel. Id. at 72. At the conclusion of the testimony the court directed Mr. Donohue to provide the remainder of the file to the court for an *in camera* review. Id. at 81. The file was subsequently provided to the court and the contents that were relevant to Petitioner's case were provided to both the Petitioner and to the Commonwealth. Among the documents provided was a document that states that as a result of a vaginitis screening on August 26, 2009 the victim tested positive for presence of "gardnerella vaginalis." Petitioner was granted leave to file an amended or supplemental petition if he chose to after review of the additional materials that he received. On February 9, 2016 he filed a "Petition to Vacate." In this petition Petitioner restates the following instances of ineffective assistance:

1) Trial counsel failed to "investigate correct medical reports,"

16

2) Trial counsel failed to call an "Obgyn Expert" to counter the Commonwealth's expert witness and to explain the significance of the presence of "gardnerella vaginalis," lack of trauma from 1200 assaults.

3) Failure to call  C.S. and Paul Anderson to testify that L.S. threatened to put the defendant in jail.

4) Failure to impeach L.S. about doing drugs and drinking; failure to present CYS report;

5) Consider the amount of accumulated evidence

Petition to Vacate. On April 7, 2016 a "Supplement to the existing P.C.R.A." was filed. On May 30, 2016 the PCRA petition was denied.

The credible evidence offered at the evidentiary hearing demonstrated that appellate counsel discontinued Petitioner's direct appeal at the direction of Petitioner after consultation. He did not, as Petitioner has alleged, "abandon" his client. At the evidentiary hearing Petitioner offered no testimony. The Commonwealth offered the testimony of appellate counsel Daniel Donohue, Esquire. See "Petitioner's Brief," attached to the PCRA petition, p. 4 ¶ V. Given the facts before the court Petitioner has failed to meet his burden of proving any one of the three "prongs" necessary to this claim. Appellate counsel's testimony was credible and uncontradicted. He discontinued Petitioner's direct appeal after consultation with Petitioner and at Petitioner's direction. He gave Petitioner sound advice. The court's review of the record leads to the conclusion that challenges to the weight and the sufficiency of the evidence were highly unlikely to succeed as they were based solely on claims that the trial court, sitting as the finder of fact failed to make determinations that favored Petitioner. Petitioner proclaimed his innocence and was eager to seek relief from his conviction based on claims that trial counsel failed to provide effective assistance at trial. This claim can only be

17

made in a collateral attack. Petitioner chose to forgo a direct appeal and to proceed to PCRA proceedings with the hope that relief would come sooner rather than later. Under these circumstances Petitioner has failed to overcome the presumption of competence and appellate counsel may not be found ineffective.

The claim that Petitioner was "denied due process of law by the withholding of discoverable evidence" has been refuted. See "Petitioner's Brief," attached to the PCRA petition, p. 4 ¶ III & supporting memorandum of law p. 30. Specifically, Petitioner claimed that the Commonwealth failed to provide him with an expert report prior to trial. He has offered no evidence supporting this allegation. At the evidentiary hearing the prosecutor represented that all discovery contained in the Commonwealth's file was provided to trial counsel and no evidence to the contrary was offered. N.T. 1/21/16 p. 9 & 14. No expert reports were offered into evidence by the Commonwealth and there is nothing to indicate that the export report that Petitioner seeks exists.

Petitioner claims that he has been denied "discovery" in these PCRA proceedings. Specifically, he claims that he was denied access to CYS records that would document the victim's threats to lie about the Petitioner to "put [him] in jail." See N.T. 1/21/16 p. 11. Petitioner baldly asserts that trial counsel told him that these records exist. Additionally, Petitioner sought a "statement" from the Victim's aunt that would dispute the Victim's representation that she was a virgin before the assaults, and psychological and school records, see id. 11-15, and as well as the unspecified "expert report" above that was allegedly withheld by the Commonwealth. These claims are patently frivolous and unsupported by any facts of record.

18

The claim that trial counsel failed to "investigate correct medical reports," is entirely speculative and therefore lacks arguable merit. Petitioner failed to prove that medical records that would tend to support his claim of innocence exist. Trial counsel secured records from a doctor's visit that occurred in August 2009 after the final assault. The victim did not report the assault to her doctor and trial counsel used this fact to impeach the victim based on her failure to report. On cross-examination of the registered nurse/sexual assault nurse examiner who testified at trial, trial counsel was able to extract testimony that the examiner found no evidence of trauma on the victim's body and an admission that in her experience, if a child was subjected to sexual intercourse repeatedly and continuously from the age of six she would expect that there would be signs of severe trauma and that in this case there were no such signs. N.T. 10/29/10 pp. 145-46. In light of the foregoing this claim fails for two reasons: first, Petitioner has failed to prove that additional medical records that would support his defense exist and second, because trial counsel succeeded in bringing evidence before the court that the victim showed no signs of physical trauma that would be expected from repeated sexual activity through the Commonwealth's witness, prejudice cannot be found. See Commonwealth v. Paddy, 15 A.3d 431, 445 (Pa. 2011) (petitioner failed to establish arguable merit where claim was based on entirely speculative assertions).

Similarly, the claim that trial counsel was ineffective for failing to call an "Obgyn Expert" to counter the Commonwealth's witness and to explain the significance of the fact that the victim tested positive for the presence of the bacteria "gardnerella vaginalis," when she was examined at the hospital on August 26, 2009 lacks arguable merit. Regarding this claim Petitioner has failed to demonstrate that such favorable expert testimony exists.

19

Petitioner has offered by way of argument only his own opinion that "gardnerella vaginalis" is a sexually transmitted disease and that the Victim was treated for it after she reported the assaults. See e.g., N.T. 1/21/16 p. 28. No evidence was offered to support the bald assertion that the presence of "gardnerella vaginalis" is indicative of a sexually transmitted disease (STD) or that Petitioner would or could have contracted the alleged STD through sexual intercourse or that Petitioner was in fact free from the alleged STD after the assaults were committed. See "Petitioner's Brief" attached to PCRA petition p. 15.

It is alleged that trial counsel provided ineffective assistance for failing to call a number of witnesses at trial. When raising a claim of ineffectiveness for the failure to call a potential witness, to satisfy the prejudice prong of his claim a petitioner must establish that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. Commonwealth v. Matias, 63 A.3d 807, 810-11 (Pa. Super. 2013) quoting Commonwealth v. Sneed, 45 A.3d 1096, 1108–09 (Pa. 2012). Counsel's failure to call a witness is not per se ineffective assistance. A petitioner must show that the witness's testimony would have been helpful to the defense. Id.

Again, Petitioner did not testify and did not call trial counsel to testify at the evidentiary hearing and, with the exception of Paul Anderson, he failed to call any of the witnesses that are referred to in his petition. Given this circumstance the Petitioner has failed to present evidence upon which the court could conclude that the absence of testimony from the identified witnesses was so prejudicial as to have denied the defendant a fair trial.

20

Regarding the "reasonable basis" for counsel's failure to call the witnesses, the record demonstrates that counsel challenged the credibility of the victim through cross-examination of the Commonwealth's witnesses and through the testimony of C.S. at trial. See N.T. 10/29/10 pp. 166-201; 123. Assuming *arguendo* that these witnesses were available, the conclusion that the decision to forego the testimony of these additional witnesses was therefore reasonable is apparent. The testimony would have been cumulative and was available from other sources.

The claim that trial counsel was ineffective for failing to present testimony from C.S. and Paul Anderson specifically concerning the victim's threats to "call the police on the Petitioner" and "put him in jail" fails. Assuming that the testimony would have been admissible, when the record is viewed in its entirety, the conclusion that "but for" trial counsel's failure to elicit this testimony Petitioner would have been found not guilty cannot be drawn. Because the PCRA court also sat as the finder of fact at trial, it has the distinct advantage of viewing the testimony offered at the PCRA in light of the credible testimony offered at trial. The trial record is replete with instances where trial counsel raised facts that if credible would have enabled the court to conclude that L.S. was a "liar" and that she had a motive for concocting this particular "lie." The Victim and the Petitioner fought constantly. Petitioner and the Victim's mother created and maintained a chaotic and dysfunctional home environment. The Victim was in placement. She engaged in under-age drinking. She resented the Petitioner and apparently suffered from a lack of parental attention. Early on both her mother and her sister refused to believe that the Petitioner assaulted her. These facts, as well as many others, were considered along with the fact that the Victim failed to report

21

alleged assaults over a period of ten or twelve years and there was no physical evidence corroborating her allegation of abuse and no physical evidence corroborating her claim that the Petitioner was her abuser. The fact that C.S. considered Petitioner her "best friend" and was contemptuous of her sister was explored at trial. Paul Anderson was a lifelong friend of the Petitioner and the PCRA court assigned his testimony little, if any weight. Therefore, after considering the testimony of these two witnesses in light of the record as a whole, it is the court's conclusion that additional testimony from these witnesses would have been cumulative and verdict would have been no different if the testimony that Petitioner currently offers was offered at trial.

The myriad of additional instances of ineffective assistance of counsel that Petitioner raises are vague, speculative and unsupported by evidence within or outside the record. They have no arguable merit and Petitioner has failed to demonstrate that he was prejudiced by counsel's alleged lapses.

In light of the foregoing it is respectfully submitted that that Order denying Petitioner's claim for relief pursuant to the PCRA after an evidentiary hearing should be affirmed.

BY THE COURT:

_____
James P. Bradley,                                    J.

2016 AUG 18 AM 10: 51
OFFICE OF
JUDICIAL SUPPORT
DELAWARE CO. PA.
FILED

22